CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 01 2010

JOHN F. CORCORAN, CLERK
BY: /s/ J. Muick
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LANDY DIAZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | Criminal No. 7:07-CR-003 |
| v. ) | Civil Action No. 7:09-CV-80138 |
| ) | |
| UNITED STATES OF AMERICA, ) | By: Michael F. Urbanski |
| ) | United States Magistrate Judge |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Petitioner Landy Diaz ("Diaz") brings this action under 28 U.S.C. § 2255, challenging his convictions and sentence for various crimes involving the theft and use of credit card numbers, the possession of equipment used to steal credit card numbers, production of false credit cards, conspiracy to commit these crimes, and aggravated identity theft. Diaz argues that his trial counsel provided ineffective assistance by failing to file an appeal after Diaz's request. By Order dated July 9, 2009, the district court referred this matter to the undersigned and directed that an evidentiary hearing be held to determine whether Diaz asked his counsel to file a direct appeal. The undersigned conducted a hearing on October 14, 2009.

As explained herein, the undersigned fully credits the testimony of counsel in this case. As such, the essential facts are that prior to trial, counsel had consulted with Diaz about an appeal, and that Diaz indicated that if he was sentenced to five years, he would appeal. After the jury returned guilty verdicts on all counts and Diaz was sentenced to sixty-five months, the court advised Diaz of his right to appeal. Immediately thereafter, counsel asked Diaz if he understood his rights, and Diaz did not at that time, or within the next ten days, ask counsel to file an appeal,

nor did any further consultation about an appeal take place. Because this case involves the issue of an appeal following a jury trial, rather than a guilty plea, during the course of which Diaz clearly had indicated his interest in appealing a five-year sentence, Supreme Court and Fourth Circuit precedent require consultation by counsel on the issue of an appeal after sentencing beyond the inquiry undertaken by counsel in this case.

As such, it is **RECOMMENDED** that this petition be **GRANTED** and that a notice of appeal be filed on Diaz's behalf by the Clerk.

## I.

In June 2007, a grand jury sitting in the Western District of Virginia returned an eight-count indictment charging Diaz with a scheme to steal credit and debit card numbers ("access devices"). Diaz pled guilty to Count Two, which involved use of counterfeit access devices.[1] Superseding Indictment at 4. In December 2007, a jury returned a verdict finding Diaz guilty of the remaining seven counts. The court ultimately sentenced Diaz to sixty-five months in prison.

Diaz's wife, Letty Mellor, was indicted on the same charges. She refused to plead guilty to any counts, and after trial also was sentenced to sixty-five months. Mellor timely appealed her conviction, which the Fourth Circuit ultimately affirmed, finding the evidence sufficient to support the jury's verdict on all counts.

---

[1] Diaz pled "straight up" to this count. Evid. Tr. at 19. He testified that he was guilty of the crimes charged except for the aggravated identity theft. Evid. Tr. at 40. Diaz testified that he:

> Didn't plead guilty to the whole last indictment because he told me it was going to be too much time, that I was going to get too much time, even if I plead guilty while losing trial. And I pled guilty to the second charge—to the second count because he told me so. He told me to plead guilty to the whole indictment, and I plead guilty to the whole indictment. But he told me plead guilty to a second count, and I plead guilty to the second count. From the very beginning, I wanted to plead guilty. And that's not new, everybody knew that.

Evid. Tr. at 33–34; see also Evid Tr. at 48 ("He told me to plead guilty to the second count, and I plead guilty to the second count."). Counsel clarified that "the count that he pled guilty to was the count where he used a credit card; they had photographs of it." Evid. Tr. at 50.

2

On March 5, 2009, Diaz filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Diaz supported this motion with a memorandum citing three reasons why the court should grant his request. First, Diaz claims he received ineffective assistance of counsel when his lawyer failed to file a timely notice of appeal after being unequivocally instructed to do so. Second, Diaz claims he received ineffective assistance of counsel when counsel did not present appropriate arguments to support his preserved objection regarding a circuit split defining "victim" in U.S.S.G. § 2B1.1. Finally, Diaz claims that the rule of lenity should apply to his convictions for aggravated identity theft because the <u>mens rea</u> requirement of 18 U.S.C. § 1028A is ambiguous.

The government moved to dismiss Diaz's request, arguing Diaz never requested that an appeal be noted on his behalf within the requisite ten day period. The government also argues that counsel's pre-sentencing and pre-trial consultation with Diaz fulfilled the duty to consult under <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000). Diaz, on the other hand, claims he requested that counsel note an appeal on the day of sentencing and that he, his wife, and his family called counsel on several occasions after sentencing to request an appeal. The court referred this singular factual dispute to the undersigned.

## II.

On October 14, 2009, the undersigned held an evidentiary hearing by videoconference to determine whether Diaz requested counsel to note an appeal within the requisite ten day period after sentencing. At the evidentiary hearing, Diaz was represented by the Federal Public Defender. He had the assistance of a court-certified translator available, but understands English and asked for the proceedings to take place in English. Evid. Tr. at 3–4, 42–43; <u>see also</u> Sent. Tr. at 3.

The following facts are undisputed: When the grand jury returned the superseding indictment charging, inter alia, aggravated identity theft, counsel told Diaz he was looking at a five-year sentence, to which Diaz responded, "Well, I will appeal the sentence. I will appeal it." Evid. Tr. at 7–8, 15, 22. Diaz's wife, who had been charged with the same crimes, also said, "I will appeal." Evid. Tr. at 15. Counsel informed Diaz that an appeal can only be used for mistakes and errors, and that Diaz should not rely on an appeal as a basis for avoiding a five-year sentence. Evid. Tr. at 8, 13–14, 22–23, 40. As counsel explained, "prior to trial, certainly we had talked about an appeal, the basis for an appeal, what may or may not be successful on appeal, but those were discussions that were had." Evid. Tr. at 8-9. The government offered Diaz a plea agreement, but it was a package deal implicating his wife, which Diaz refused to do. Evid. Tr. at 40–42, 45, 50–51. Counsel explained at the evidentiary hearing his frustration with Diaz's intransigence on this issue. "And of course, the government's evidence, in my opinion, was quite strong, and so it was quite clear what I needed to do. And when Mr. Diaz wasn't inclined to pursue that avenue, I was quite frustrated with him and the fact that I could not mitigate his sentence." Evid. Tr. at 10. Counsel commented further as follows:

> And when looking back on this, these conversations that I had with him is, "Why are you doing this? Why are you pursuing a course of action that's going to get you five years in the penitentiary when we can lessen that by a great degree?" And it was almost a deer caught in the headlights, just somebody that couldn't. And I didn't know whether it was because he was protecting his wife or protecting people that maybe he was afraid of. It was a frustrating experience trying to represent Mr. Diaz.

Evid. Tr. at 25.

In the context of counseling Diaz to pursue a more favorable plea agreement, counsel discussed with Diaz the issue of an appeal. Counsel testified as follows:

4

> Well, it came up with me as I was – and I was probably – my frustration with him as I was entreating him to allow me to pursue what I thought was a better course of action than going to trial and facing guidelines that called for five years – you know, I knew what the codefendant was going to receive, somewhere in – the guidelines called for him to receive somewhere in the 18 to 24 months. And it was my frustration with Mr. Diaz, and me maybe leaning on him or strongly encouraging him to allow me to work something out, and Mr. Diaz saying, "I will appeal," and me quickly responding to that, "Yes, you can appeal, but let me tell you what the problem with that is."

Evid. Tr. at 22. Counsel further explained his discussion with Diaz as follows:

> A. Well, certainly, as a defense attorney, you want to advise your client of the right to appeal. We had had those discussions on two or three different occasions of his right to appeal as we were going forward. These were conversations that we had. And it was always my statement, it's based upon errors or omissions or mistakes at the trial level, and if there are not any, that is not going to occur.
>
> After the verdict came in – and I don't recall anything specifically from the date of the trial until the sentencing hearing, but it was – prior to trial, it was – it wasn't an "I told you so" type attitude, but it was, "Here's where we're headed. The guidelines call for five years; that's where you're going. You need to allow me to do something. You shouldn't rely on an appeal. An appeal is probably not going to be successful unless one of these errors occur, and therefore you should allow me to do this, and if not, this is where we're going to end up."
>
> But, no, I don't specifically recall saying, you know, "you have to note your appeal within ten days" after Judge Conrad mentioned it.
>
> Q. But the Court made that fairly explicit?
>
> A. I mean, the Court had just told him that, the Court had just stated that to him.

Evid. Tr. at 13-14. Counsel could not recall whether these discussions were before or after trial.

Evid. Tr. at 15. In any event, it is clear that any such discussion took place prior to the

5

sentencing hearing. Evid. Tr. at 13-16. Counsel indicated that had Diaz requested him to note an appeal, he would have done so. Evid. Tr. at 23.

At the sentencing hearing, counsel made three objections. Counsel objected to (1) the government's allegation that Diaz's relocation to Florida was for the purpose of continuing a fraudulent scheme; (2) the inclusion of a two-level enhancement in the presentence report because Diaz was an organizer, leader, or manager; and (3) the government's denial of a two-level decrease for acceptance of responsibility. Evid. Tr. at 20. The court overruled all three objections. Evid. Tr. at 21. At the close of the sentencing hearing, the court clearly informed Diaz of his right to appeal. Evid. Tr. at 12; Sent. Tr. at 66 ("Mr. Diaz, I tell you, you have the right to appeal the Court's judgment in your case. Should you wish to do so, I advise you that a notice of appeal must be filed within ten days of the entry of judgment . . . . If requested, the clerk will prepare and file a notice of appeal on your behalf.").

Three months after sentencing, Diaz called counsel and asked for an appeal. Evid. Tr. at 16. At that time, counsel informed Diaz, "You had to note the appeal within ten days. It's gone, your right to appeal is gone." Evid. Tr. at 16.

The disputed facts concern what transpired in the courtroom immediately after the sentencing hearing. Counsel testified that he followed up the court's notification of Diaz's right to appeal by asking Diaz the following questions: "Do you understand what the judge just said? Do you understand your sentence? Do you understand your rights? Do you have any questions?" Evid. Tr. at 12, 22. Counsel testified that Diaz "[c]ertainly" did not mention an appeal at that time. Evid. Tr. 22. On the other hand, counsel explained that he did not recall specifically telling Diaz, "Be sure to call me within the ten days," nor did counsel send Diaz a follow-up letter within the ten-day period. Evid. Tr. at 22, 25.

6

For his part, Diaz recalled a very different conversation at the close of the sentencing hearing. Evid. Tr. at 31. Diaz testified that he asked counsel to appeal the case while they were still in the courtroom after the sentencing hearing. Evid. Tr. at 30, 32, 35–36. Diaz claims he "told him straight out 'I want to appeal my case.'" Evid. Tr. at 30. Diaz testified that this conversation took place while Diaz and counsel were in the courtroom, as Diaz was being led out. Evid. Tr. at 35, 37. Diaz alleges that he and counsel shook hands, Diaz asked for the appeal, and counsel may have said, "Good luck" or "Sorry." Evid. Tr. at 35–36. Counsel maintains that if Diaz asked for an appeal, he did not hear it. Evid. Tr. at 49.

Regardless of what was said in the courtroom in the moments following the conclusion of the sentencing hearing, there is no evidence that counsel and Diaz spoke again until three months later. Evid. Tr. at 23. Diaz claims that his wife called counsel and specifically requested an appeal. Evid. Tr. at 33, 43. Counsel admits that Diaz's wife called him, though he is not sure whether it was within the ten-day period, but counsel is certain that she never mentioned an appeal. Evid. Tr. at 50. Diaz claims that his father and friends and his father's friends tried to call counsel, but they never got through to counsel, his secretary, or his voicemail. Evid. Tr. at 33, 43. Counsel testified that Diaz did not attempt to contact him during the ten-day period. Evid. Tr. at 16.

The undersigned credits counsel's account of the events immediately following the sentencing and finds counsel's testimony to be more credible. As such, the undersigned does not credit Diaz's assertion that he specifically requested counsel to note an appeal either in the courtroom immediately after the sentencing or at any time during the next ten days. Even fully crediting counsel's testimony, however, Supreme Court and Fourth Circuit precedent requires the undersigned to recommend that Diaz's habeas petition be granted.

## III.

The Sixth Amendment to the United States Constitution provides criminal defendants with the right to reasonably effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). A defendant claiming ineffective assistance of counsel must show (1) that counsel's representation "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. Id. at 688, 694. This test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). This two-prong test forms the basis of the instant analysis.

### A.

The Supreme Court consistently has rejected a bright-line rule requiring counsel to always discuss the possibility of an appeal with the defendant, ascertain his wishes, and act accordingly. Flores-Ortega, 528 U.S. at 478. Instead, the Court relies on a "circumstance-specific reasonableness inquiry." Id.; Strickland, 466 U.S. at 687–88. The question remains: Was counsel's failure to consult with Diaz after sentencing about an appeal unreasonable?

Of critical importance, the Flores-Ortega Court rather specifically outlined the parameters of what "consult" means in this context. "We employ the term 'consult' to convey a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." 528 U.S. at 478.

There are two situations in which an attorney's failure to consult with his client rises to the level of "unreasonable." First, "when a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)." Flores-Ortega, 528 U.S. at 480. Second, when a defendant reasonably demonstrated to his counsel his interest in appealing. Id. at 480. The Supreme Court noted that "courts evaluating the reasonableness of counsel's

performance using [this] inquiry . . . will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." Id. at 481.

### 1.

The first inquiry under Flores-Ortega's reasonableness test is satisfied if a rational defendant in Diaz's shoes would want to appeal his sentence. 528 U.S. at 480. The Supreme Court identified one example of when a court may draw the inference that a rational defendant would want to appeal his sentence: when there are nonfrivolous grounds for appeal. Id. at 480. In this case, there were at least three nonfrivolous grounds for appeal, to wit: the three objections raised at the sentencing hearing. Evid. Tr. at 20–21. To be sure, counsel stated at the evidentiary hearing that he did not believe that there was a good faith basis for filing an appeal on those three grounds as they were not "strong." Evid. Tr. at 23-24. Despite counsel's characterization of the strength of the grounds for appeal, these issues were asserted at the sentencing hearing. Evid. Tr. at 23–24. An attorney's own belief about the strength of the grounds for appeal is immaterial once his client unequivocally requests an appeal. Flores-Ortega, 528 U.S. at 477 ("[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). Here, Diaz had previously told counsel that if he got five years, he would appeal. Given Diaz's statement of his intention to appeal in this regard, once he was sentenced to more than five years, counsel was constitutionally obliged to consult about an appeal. While the court clearly advised Diaz of his right to appeal and counsel immediately followed up by inquiring as to whether Diaz understood his rights, the Supreme Court has made it clear that consultation, in the constitutional sense, transcends the mere understanding of the right to appeal. Rather, it involves more – "advising

the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478.

## 2.

The second Flores-Ortega reasonableness inquiry is likewise satisfied. The undersigned considers "all relevant factors . . . [to] properly determine whether . . . the particular defendant sufficiently demonstrated to counsel an interest in an appeal." Id. at 480. The undersigned believes that Diaz did not specifically ask counsel to appeal his sentence immediately after the sentencing hearing or within the next ten days. However, prior to trial, Diaz had clearly indicated to counsel his interest in appealing if he received a five-year sentence. Evid. Tr. at 8, 15. Counsel stated that when he told Diaz he was looking at a five-year sentence, Diaz said, "Well, I will appeal the sentence. I will appeal it." Evid. Tr. at 8. Counsel noted that he said this in the presence of three other people, including Diaz's wife and her lawyer. Evid. Tr. at 15. At that meeting, Diaz's wife also made it clear that she would appeal her sentence on the same charges, Evid. Tr. at 15, which she ultimately did.

Diaz further claims, and counsel denies, that Diaz attempted to call counsel for three months with no answer. Counsel disputes that there was any communication during this time, stating, "[N]othing would indicate I called him, he called me, or that I went to the jail." Evid. Tr. at 16. Furthermore, counsel stated that his office uses messaging software that logs "every message that comes in." Evid. Tr. at 26. On the other hand, Diaz claims that the phone records should indicate that he was attempting to contact Diaz. Evid. Tr. at 33. He specifically stated, "They're supposed to appeal [sic] the phone records. I told him when I get my phone records. My father and my friends called [counsel] and never get to him. My wife was the only one to talk to him. And I called him, too, and I never get to him. And that should be in the phone

records." Evid. Tr. at 33. Despite both parties' assertions that some records exist to support their claims -- that Diaz did or did not attempt to contact counsel -- neither party introduced any such documents into evidence.

Nevertheless, considering the totality of the circumstances, there is no dispute that Diaz had made clear his interest in appealing a five-year sentence. Even though the court does not credit Diaz's testimony that he requested an appeal as he was being led from the courtroom, or otherwise within the next ten days, he had plainly indicated before trial that he would appeal if he received a five-year sentence. Evid. Tr. at 8, 15. In this regard, the unusual facts of this case mirror those facing the Fourth Circuit in United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000). In Witherspoon, the defendant told counsel prior to sentencing that if the court did not go along with his objections to the presentence report that he "would like [his] case reviewed by a higher court." 231 F.3d at 925. As in this case, the government argued that the court advised Witherspoon of his right to appeal and that he never directed or instructed counsel to file an appeal. The Fourth Circuit rejected this argument, ruling that:

> If it is indeed true that Witherspoon expressed his intention to appeal if his objections were overruled and counsel decided not to file an appeal without having discussed the matter further with Witherspoon after he was sentenced, counsel's performance clearly was constitutionally deficient.

Witherspoon, 231 F.3d at 927.

**B.**

Strickland's second inquiry requires the defendant to demonstrate prejudice. The Supreme Court instructs the undersigned to presume prejudice when counsel's deficient performance deprives a defendant of a notice of appeal. Flores-Ortega, 528 U.S. at 483. "According to respondent, counsel's deficient performance deprived him of a notice of appeal

and, hence, an appeal altogether. Assuming those allegations are true, counsel's deficient performance has deprived respondent of more than a *fair* judicial proceeding; that deficiency deprived respondent of the appellate proceeding altogether." Id. at 483 (emphasis in original). Under the particular facts of this case, Diaz was deprived of the appellate process. Such a deprivation "mandates a presumption of prejudice." Id. at 483; see also Smith v. Robbins, 528 U.S. 259, 286–87 (2000); Strickland, 466 U.S. at 693–96; United States v. Cronic, 466 U.S. 648, 658–59 (1984).

A petitioner must still "demonstrate that, but for counsel's deficient performance, he would have appealed." Flores-Ortega, 528 U.S. at 484. Accordingly, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Id. at 484. Diaz's claim survives such scrutiny.

Diaz need not "specify the points he would raise" on appeal. Rodriquez v. United States, 395 U.S. 327, 330 (1969). "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." Flores-Ortega, 528 U.S. at 485. Indeed, these are the same factors used to test the "reasonableness" prong, see discussion § III.A., supra, and thus are not rehashed here. See Flores-Ortega, 528 U.S. at 485–86 ("We recognize that the prejudice inquiry we have described is not wholly dissimilar from the inquiry used to determine whether counsel performed deficiently in the first place; specifically, both may be satisfied if the defendant shows nonfrivolous grounds for appeal."). It is undisputed that Diaz expressed his desire to appeal throughout the pretrial stages of this case, requiring counsel to consult with Diaz following

sentencing. Just as these factors satisfy Strickland's reasonableness prong, they also establish prejudice. Id. at 485-86.

Despite highly deferential scrutiny of counsel's performance, Flores-Ortega, 528 U.S. at 477; Strickland, 466 U.S. at 689, the undersigned is constrained to conclude that under the very specific circumstances of this case, Diaz should be permitted to file a notice of appeal at this time.

## IV.

For these reasons, it is **RECOMMENDED** that this petition be **GRANTED** and that an Order be entered directing the Clerk to file a Notice of Appeal on Diaz's behalf.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Glen Conrad, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to petitioner and counsel of record.

**ENTER:** This 1st day of March, 2010.

Michael F. Urbanski
United States Magistrate Judge